UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Darick M.[1]          )
              )
 Plaintiff,        )
              )
v.             ) No. 17 CV 50140
              ) Magistrate Judge Iain D. Johnston
Nancy A. Berryhill,       )
Commissioner of Social Security,   )
              )
 Defendant.       )

## MEMORANDUM OPINION AND ORDER

  Plaintiff Darick M. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's denial of his application for disability benefits. Plaintiff asks this Court to reverse the decision of the Commissioner and remand for further proceedings because of "new and material" evidence presented by Plaintiff to the Appeals Council. The Court does not interpret Plaintiff's briefs to be arguing that the administrative law judge (ALJ) failed support her decision with substantial evidence, except to the extent that the decision is contrary to the "new and material" evidence. Nevertheless, out of an abundance of caution, this Court has independently reviewed the decision and believes that the ALJ properly analyzed a range of conflicting testimony and objective medical evidence to reach a conclusion that was adequately supported by the record at the time of her decision. Moreover, this Court finds the Appeals Council did not err when it refused to consider Plaintiff's supplemental evidence because it was not "new and material." This Court affirms the judgment. Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted.

---

[1] Plaintiff's last name has been redacted in accordance with Internal Operating Procedure 22.

## I. Background

Darick M. was shot in the left eye on January 21, 2012. Pl.'s Mot. for Summary Judgment, Dkt. 13 at 1. As a result, he sustained multiple facial fractures, is blind, and has decreased sensation on the left side of his face. *Id.* Later, he reported loss of his sense of smell. *Id.* at 3. During an optometry evaluation in 2014, it was also noted that Plaintiff's right eye vision was deteriorating. *Id.*

Since his injury, Plaintiff has frequently complained of facial and sinus pain, which he alleged is caused by bullet fragments left in his face. *Id.* at 2-3. Beginning in 2014, he reported nightmares and increased paranoia from being shot, making it difficult for him to leave his house. *Id.* He also stated he was having difficulty handling his emotions and was having frequent anger outbursts and panic attacks when he left the house, as well as racing thoughts (including reliving being shot), difficulty trusting others, being startled easily by loud noises, and feeling like he constantly had to look over his shoulder. *Id.* at 3. Plaintiff complained that his significant mental distress and grief worsened his physical pain. *Id.* In May 2014, he began treatment for his mental health concerns and was later diagnosed with depressive disorder and posttraumatic stress disorder ("PTSD"). *Id.* at 3-4. He was prescribed both pain and psychiatric medication. *Id.* at 3. On several occasions during consultative examinations, however, Plaintiff was accused of giving "malingering and false answers" and making inconsistent statements. *Id.* at 2.

On November 12, 2013, Plaintiff applied for disability insurance benefits and supplemental security income. *Id.* at 4. After Plaintiff was denied at the initial and reconsideration levels, a hearing was held before Administrative Law Judge Jessica Inouye of the Social Security Administration on March 21, 2016. *Id.* at 4; *see also* ALJ's March 21, 2016 decision, Dkt. 10-3 at 12-22.

In the May 4, 2016 written decision, the ALJ denied Plaintiff's request for disability benefits. *Id.* She concluded Plaintiff could complete light work without exposure to hazards (except jobs that require depth perception or vision on the left side), could learn, understand, remember, and carry out simple, routine, and repetitive tasks, and could sustain these tasks throughout a typical work day. *Id.* at 17. Although she concluded Plaintiff should not work with the general public or participate in team or partnered tasks, he could, however, tolerate occasional brief interactions with coworkers. *Id.*; *see also* Dkt. 13 at 4. Critically as to Plaintiff's claim of pain in the left eye and mental health issues, the ALJ addressed them, and in doing so, addressed the conflicting evidence. For example, as to Plaintiff's left eye pain, the ALJ stated the following: "However, despite complaints of pain rated a '10' on a 10-point scale, the claimant is noted as in no acute distress during office visits." Dkt. 10-3 at 17-18. As to Plaintiff's mental issues, the ALJ addressed those in the following lengthy paragraph, addressing both evidence that supported Plaintiff's claims and evidence that contradicted his claims, eventually weighing the competing evidence to find that Plaintiff could participate in occasional social interaction.

> In terms of claimant's alleged paranoia and social anxiety, the objective medical evidence does not support the alleged severity of these symptoms. Examination records do indicate complaints of daily nightmares, reclusive behavior, hypervigilance, and difficulty leaving the house, and the claimant was diagnosed with PTSD and depression. However, treatment notes show that the claimant is calm, and he reported that he is overall doing "pretty good" in May 2014. A consultative examiner also noted that, although the claimant stated that he has paranoia and will always face the door in a room, he was observed sitting with his back against the door in both the waiting area and the office with no problems. Contrary to the claimant's statements that he is unable to leave his house, he reported in July 2014 that he went to a barbeque and was able to laugh and enjoy himself. During an August 2014 office visit, the claimant reported that he participated in activities outside of his home three times in the prior week. The claimant also reported that he was regularly going for walks. In October 2014, the claimant reported that he helped an elderly woman get on the bus, and that he started talking to his neighbor about sports. Although the records in January 2015 appear to indicate some worsening symptoms, showing that the claimant was no longer riding the bus due to paranoia, they also show that the claimant was still taking walks to the library on a regular basis. In June 2015, the claimant reported that he attended a festival and was celebrating the birth of his first granddaughter. Overall, the treatment records show that the claimant's mood is stable and within normal limits,

and he is capable of participating in occasional social interaction despite symptoms of paranoia and anxiety.

*Id.* at 18. Moreover, the ALJ's residual functional capacity determination specifically considered both his left eye blindness and mental health issues, finding that Plaintiff could not perform work requiring depth perception or the use of vision on the left side, and could not work with the general public, with teams, and could tolerate only occasional and brief interactions with coworkers.

After the ALJ's written opinion denying benefits issued, Plaintiff obtained a letter of support from two of his treating physicians, Dr. Glenn Sample and Dr. Edwin Okeson. *Id.* at 5-6. Dr. Sample, a Doctor of Psychology and a Licensed Clinic Professional Counselor who had been treating Plaintiff since December 2015, focused his letter on Plaintiff's most-recent symptoms of mental illness. *See* Dkt. 10-8 at 456. Dr. Sample's letter first noted that the ALJ's decision relied upon Plaintiff's admitted walks, visits to the library and attendance at family functions. *Id.* Dr. Sample pointed out that "someone with Post Traumatic Stress Disorder may have good days, as well as bad days." *Id.* Further, according to Dr. Sample, cherry picking (the Court's term, not his) from medical notes over the course of a few months does not provide an accurate description, but then himself paradoxically cherry picks the medical notes to support Plaintiff's argument, without confronting the contrary evidence in those same records.[2] Finally, oddly, Dr. Sample stated that Plaintiff's walking and reading were "effective at alleviating his symptomology." *Id.* Plaintiff's engaging in activities that alleviate his mental impairments supports the ALJ's determination. The letter from Dr. Okeson, Plaintiff's primary care provider, started by noting that Plaintiff was complaining about the legal process, and identified several gripes Plaintiff had about the ALJ. For

---

[2] The Court is surprised at Dr. Sample's beef that the ALJ considered evidence over the course of several months. ALJs are rightfully pilloried when they take a myopic view of the mental health record and focus on a short time of good feelings. The ALJ did not do that here. Instead, she focused on the longitudinal aspect of the medical records. Having a longitudinal view is precisely why treating physicians' opinions are given more weight.

4

example, according to Dr. Okeson, Plaintiff claimed the ALJ found that Plaintiff was not blind, was not suffering from PTSD and was not on the proper medication. *Id.* None of this is true.[3] Indeed, the ALJ specifically found that Plaintiff was blind in his left eye and suffered from PTSD. Dr. Okeson's letter then confirmed Plaintiff's blindness in his left eye, called Plaintiff's pain "typical" of a patient with a removed eye, and stated that "PTSD can be extremely debilitating" and last a long time despite treatment. *See id.* at 457.

On June 3, 2016, Plaintiff requested the Social Security Administration Appeals Council review the ALJ's decision denying benefits and he submitted his two doctors' letters as supplemental evidence. *See* Order of Appeals Council, Dkt. 10-3 at 6. On March 22, 2017, the Appeals Council denied Plaintiff's request for review. *Id.* at 2. The Appeals Council stated they "considered the reasons [Plaintiff] disagree[s] with the decision and the additional evidence…[and w]e found that this information does not provide a basis for changing the [ALJ]'s decision." *Id.* at 3. As addressed below, this boilerplate language must be interpreted to mean that the Appeals Council looked at the letters and determined they did not qualify as "new and material evidence". In the Seventh Circuit, this boilerplate language cannot be interpreted as meaning that the Appeals Council reviewed the letters, weighed them in evaluating whether the ALJ erred, and determined that the ALJ did not err. In other words, although the Appeals Council said it "considered" the letters, it really did not consider them in the larger sense. This decision of the Appeals Council rendered the ALJ's decision final. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Plaintiff now asks this Court to review the ALJ's decision and review of the Appeals Council's failure to consider his supplemental evidence.

---

[3] Plaintiff is not the most credible witness. His testimony as to working at a meat store is not believable, just as his testimony about what he learned in computer classes is questionable. Further, during a consultative examination, he repeatedly changed his answers to questions, which does not lend to credibility.

5

## II. Discussion

This Court is forced to address the procedural morass caused by Plaintiff's actions. In his opening brief, Plaintiff argued that the case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g). The Commissioner's response brief established that sentence six was the improper vehicle for a remand under the facts of the case. After establishing this legal proposition, the Commissioner then stated a possible alternative route for a limited review and possible remand, but then argued that under that standard Plaintiff would still lose. The Commissioner argued that the two letters were not "new" or "material." Finally, the Commissioner asserted that Plaintiff forfeited all other arguments, and that any error by the Appeals Council is harmless. Plaintiff's reply brief then confessed error as to the sentence six argument—the sole basis raised in the opening brief. Plaintiff then adopted the Commissioner's alternative route for review but asserted that under that standard a remand is required. This frustrating briefing process is unfortunately not new to Plaintiff's counsel and the Commissioner. This Court has been burdened with this problematic briefing many times. *See, e.g., Melissa G. v. Saul,* 18 CV 50218, 2019 U.S. Dist. LEXIS 156606, at *21-23 (N.D. Ill. Sept. 13, 2019) (plaintiff generally asserted that remand was warranted under a listing without any specificity, forcing the Commissioner to evaluate each possible application of the listing to the facts in its response brief, then plaintiff latches on to the governments best argument for the listing in the reply brief); *Mike H. v. Saul,* 18 CV 50162, 2019 U.S. Dist. LEXIS 127164, at *6-13 (N.D. Ill. July 31, 2019) (plaintiff makes arguments based on misreading the record in opening brief, government points this out in response, plaintiff attempts to raise new arguments in reply brief). This must end. Plaintiff's sentence six argument is legally incorrect, and he admits it. Plaintiff cannot raise new arguments in a reply brief. *Narducci v. Moore*, 572 F. 3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find an argument raised for the first time in a reply brief is forfeited."). Indeed, raising new arguments in a reply brief is dirty pool. *Tucker v. Colvin*, 14 CV

6

50021, 2015 U.S. Dist. LEXIS 149005, at *21 (N.D. Ill. Nov. 4, 2015). So, any other argument in favor of a remand is forfeited. *Narducci*, 572 F. 3d at 324; *see also Estate of Phillips v. City of Milwaukee*, 123 F. 3d 586, 597 (7th Cir. 1997) (arguments made for first time in reply brief forfeited). To prevent further snafus in the future, this Court applies the forfeiture doctrine and finds that Plaintiff has forfeited all other arguments other than the admittedly erroneous sentence six argument.

Even if this Court were to address the new basis for remand Plaintiff raises for the first time in his reply brief, a remand is not required because the letters from Dr. Sample and Dr. Okeson are not "new" evidence.

The three critical documents in this case are the two documents Plaintiff submitted to the Appeals Council and the Appeals Council's order relating to those two documents. The letters of Dr. Sample and Dr. Okeson were created in response to and to rebut the ALJ's reasonable and correct decision denying benefits. These two documents were not based on any new evidence, such as a recent treatment or report, that was unavailable at the time of the hearing or even between the end of the hearing and the ALJ's decision. That's bad. Not to be outdone, the Appeals Council's order is also bad. The order is vague, contradictory, and conclusory. It is a prime example of the type of Appeals Council order the Seventh Circuit has repeatedly criticized. *Stepp v. Colvin*, 795 F.3d 711, 723 (7th Cir. 2015). Indeed, this Appeals Council order was issued almost two years after the Seventh Circuit last criticized these types of orders. *Id.* The following are the relevant provisions from the Appeals Council order:

> We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review.
> 
> \*       \*       \*
> 
> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed in the enclosed order of Appeals Council.
> 
> We considered whether the Administrative Law Judge's actions, findings, or conclusions is contrary to the weight of the evidence currently of record. We found

7

> that this information does not provide a basis for changing the Administrative Law
> Judge's decision.

Dkt. 10-3 at 1-2. Attached at the end of the "Order of Appeal Council" is a list of additional evidence that "[t]he Appeals Council has received . . . which it is making part of the record." The list is the two letters and Plaintiff's brief to the Appeals Council. *Id.* at 5. This is the type of order that the Seventh Circuit has found may avail a claimant to a limited type of appeal, but only if the additional evidence is "new" and "material." *Stepp*, 795 F.3d at 723.

But the two letters are not "new" evidence. In this situation, "new" means "not in existence or available to the claimant at the time of administrative proceeding." *Stepp*, 795 F.3d at 725. Although Dr. Sample and Dr. Okeson's letters were created after the ALJ issued her decision, the documents contained no new evidence. The documents were simply conclusory rehash of information already in the medical record submitted to and reviewed by the ALJ. *See Baldwin v. Berryhill,* 2018 U.S. App. LEXIS 23433, at *8 (7th Cir. Aug. 21, 2018) (although evidence was "technically 'new,' meaning that [the therapist] had not written them at the time of the hearing, they did not rest on 'new' evidence—they merely reflected [the therapist's] reconsideration of existing evidence"); *Jens v. Barnhart*, 347 F. 3d 209, 214 (7th Cir. 2013) ("Although the report had not yet been written at the time of the ALJ's decision, the information summarized in the report had long been in existence."); *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (evidence not "new" if already part of the record when the case was before the ALJ).

Dr. Sample and Dr. Okeson's letters are very different than the types of documents the Seventh Circuit considers to be "new." For example, in *Stepp v. Colvin*, the Seventh Circuit found the evidence to be "new" when the notes upon which the evidence was based was created after the hearing but before the ALJ's decision. *Stepp*, 795 F.3d at 725. Similarly, in *Farrell v. Astrue,* 692 F. 3d 767, 770-71 (7th Cir. 2012), the Seventh Circuit found the record to be "new" because it confirmed an issue that filled an evidentiary gap at the time of the hearing. There is no evidentiary gap in this

8

case. The evidence presented to the Appeals Council is the same, and it is insufficient to support Plaintiff's claim for benefits. The two documents are just rehash of existing medical records that were already before the ALJ and simply attempt to rebut the ALJ's determination relating to that evidence.

### III. Conclusion

Plaintiff's only non-forfeited argument was admittedly erroneous. All other arguments are forfeited. Even if not forfeited, Plaintiff's attempt to review the Commissioner's decision fails because the evidence presented to the Appeals Council was not "new."

Date: December 9, 2019   By: _____
Iain D. Johnston
United States Magistrate Judge